## BALTIMORE CITY COURT.

Filed January 31, 1922.

FINANCE AND GUARANTY COMPANY
VS.
GEORGE C. DAUSES, ET AL.

*Enos S. Stockbridge* for plaintiff.
*Horton S. Smith* and *J. Abner Sayler* for defendants.

STUMP, J.—

Opening statement on behalf of the plaintiff made by Mr. Stockbridge and opening statements on behalf of the defendants made by Messrs. Smith and Sayler.

Mr. Stockbridge—It is agreed that the defendant Max Belkin entered into a conditional sales agreement dated September 9th, 1920, with the Baltimore Republic Truck Company for the sale of one Republic truck. The conditional sales agreement shows the deferred payments secured thereby amounted to $769. The conditional sales agreement was duly assigned to the plaintiff in this case by the Baltimore Republic Truck Company and

was recorded in accordance with the provisions of the statute on the 3rd of November, 1920, the copy of the conditional sales agreement being admitted and offered in evidence. Prior to January 4th, 1921, the deferred payments covered by said conditional sales agreement were in default, and on January 17th the plaintiff filed this replevin case and took the truck from one George C. Dauses, one of the defendants in this case.

Mr. Smith—on the part of the defendant the following testimony was offered, and by agreement of counsel was accepted as the testimony on the part of the defendants: That the Realty Mart, a corporation, was the owner of premises 203 Diamond street, in Baltimore City, and had as its tenant therein one Max Belkin. That the property 203 Diamond street, so numbered by the city officials of Baltimore, is a portion of the premises 512 West Lexington street, also owned by the Realty Mart, and while numbered as two properties, in fact, consisted of one property, wherein Max Belkin conducted the business of mattress making. That about his business as mattress maker Max Belkin used the Republic Truck mentioned in these proceedings, and the said Max Belkin, having become indebted to the Realty Mart for rent due, a distraint was issued by the Realty Mart, the landlord, on the 4th day of January, 1921, for the rent due December 1, 1920, amounting to $125. That the rent due on January 1st not being paid by Max Belkin, the Realty Mart issued a second distraint for the rent due on January 1, 1921, amounting to $125, or a total of $250. That Max Belkin was a tenant of the Realty Mart by virtue of a lease between them. That on the 7th of January, 1921, a schedule of the Republic Truck, being the truck mentioned in these proceedings, was caused to be prepared by James W. Lewis, chief constable of Baltimore, said truck having been found upon the premises 203 Diamond street and 512 West Lexington street, and the property was advertised for sale in the Baltimore Sun on January 14th and January 15th the said sale taking place on January 15th in accordance with said advertisement filed herewith, at 10 o'clock A. M., on the premises. That a schedule of the property distrained on January 4th and on January 7th was posted upon the premises 512 West Lexington street and 203 Diamond street on the 7th of January. 1921, and was also set up in two conspicuous places in the People's Court for Baltimore. That on the 15th day of January, 1921, the automobile truck mentioned in these proceedings was sold at public auction to the defendant herein, George C. Dauses, for the sum of $375, and the said Dauses paid said sum of $375 to the auctioneer at the time of said sale, he being the highest bidder therefor. That no replevin was instituted by the plaintiff herein within five days of the 7th of January, 1921, nor was any notice given by the plaintiff herein to the defendant herein, nor to James W. Lewis, the constable, nor to Pattison & Gahan, auctioneers, conducting said sale, before the 15th of January; that said truck was not the property of Max Belkin, and no demand was made by the plaintiff herein on any of the parties herein, or upon James W. Lewis, constable, or upon Pattison & Gahan, auctioneers conducting the sale as aforesaid; that said truck should be turned over to the plaintiff herein.

Mr. Stockbridge—We object to the latter part of the statement about the notice.

The Court—Leave it in, subject to exception.

Mr. Smith—That the building upon the property 203 Diamond street and 512 West Lexington street is not used as a livery stable nor as a garage.

(Objected to.)

The Court—Leave it in, subject to exception.

Mr. Smith—The property was not used as a livery stable nor as a garage, but was used for the manufacture of bedding, and the Republic Truck of Max Belkin was stored therein when not in use.

Mr. Stockbridge—I object to that.

The Court—The statement should show, as the court understands it, that this property which the tenant leased was not a garage property, but it was lease for business purposes and the truck of the tenant the tenant kept in that building, but he did not keep other people's automobiles, kept merely his own in that building, the same as a man would keep his horse in his own stable, where he would not keep other people's horses as a livery stable, using it merely for his own horse.

Mr. Stockbridge—Mr. Smith, was any of the other property scheduled sold, and, if so, how much did it bring?

Mr. Smith—In response to Mr. Stockbridge's question the answer of the defendants is that no other property was sold because the sale of the Republic truck brought a sufficient sum to pay the amount of the distress then due.

Mr. Stockbridge—What was done with the property not sold?

Mr. Smith—It was left on the premises.

Mr. Stockbridge—Was the property not sold returned to Max Belkin?

Mr. Smith—We don't know; it was left on the premises. The constable and the auctioneer left after they had sold sufficient property to pay the amount then due for rent.

Mr. Stockbridge—What was the appraised value of the other property?

Mr. Smith—$281.50 was the value of the appraised property not sold.

(Testimony closed.)

The Court (after argument)—Now, this statute of William and Mary, as the court understands it, provides that after notice given, and that the court takes to mean after the notice referred to in that statute be given, that then unless somebody is heard from by way of replevin or otherwise, after five days, the constable or other officer is authorized to sell. That statute does not have in it, as I recollect, any exemptions; does not make those provisions. Now, then, the statute which is still in force in this State has been modified to some extent from time to time by the State of Maryland for reasons of public policy. In the first place, the most striking things exempted are those of the traveling public, putting their horses in the livery stable, or putting their goods in hotels—that was the purpose of the first exemptions, and these exemptions were extended from time to time until you get down in the last instance to the Act of 1908, which exempted the motor vehicles.

Now, subsequent to the Act of 1908, we have the Act of 1916, Chapter 355, with reference to conditional contracts of sale, and the provisions for their recording, and toward the close of that statute we find this language: "And such recording shall be sufficient to give actual or constructive notice to third persons when a memorandum of the paper writing setting forth" certain things, so that, as I say, I do not believe the reference to the notice in this statute of William and Mary would apply in this case under these circumstances. The Act of 1908, which includes motor vehicles, giving the exemption, does not seem to confine itself to public garages, corresponding with the livery stable, or on that foundation. And then it does seem to the court in this subsequent statute—the court may be in error about this, but this is the way it appears to my mind —that this statute of 1916, some years after the Act of 1908, is by its terms such as to preclude all persons from acting without notice with reference to the subject of conditional terms of sale, whether distraint proceedings are in contemplation, or other proceedings, and it seems to the court it must be that the legislature meant where these conditional sales contracts were in due form, as required by the statutes, and recorded as required by the statutes, that all persons were bound to take notice. Now, these other questions, which would be fairer, or which person would be injured and prejudiced most, it seems to me are not questions that apply in this case.

So that the substance of the court's ruling, as the court understands it, is that this Act of 1916 would preclude not only persons generally, but landlords even, from selling motor trucks found on their premises without taking notice of the record of conditional contracts of sale.